IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **SUSAN GOLDMAN and NATIONAL ASSOCIATION OF GUN RIGHTS,**<br><br>　　　　　　　　　**Plaintiffs,**<br><br>　　v.<br><br>**CITY OF HIGHLAND PARK, ILLINOIS,**<br><br>　　　　　　　　　**Defendant.** | **Case No. 22 C 4774**<br><br>**Judge Harry D. Leinenweber** |

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

In 2013, the City of Highland Park, Illinois ("Highland Park" or "the City") amended its City Code to prohibit assault weapons and large-capacity magazines. Soon after its enactment, the Code was challenged as unconstitutional under the Second Amendment. This Court rejected that challenge, and the Seventh Circuit affirmed in *Friedman v. City of Highland Park,* 784 F.3d 406 (7th Cir. 2015), *cert. denied,* 577 U.S. 1039 (2015). But the Supreme Court's recent decision in *New York Rifle Ass'n v. Bruen* has raised questions regarding the ongoing validity of *Friedman* in this Circuit. 597 U.S. 1 (2022). Thus, this case is akin to other post-*Bruen* Second Amendment challenges, both across the nation and in this District. *See Bevis. City of Naperville,* 85 F.4th 1175 (consolidated appeal of four related post-*Bruen* case); *Antonyuk v. Chiumento,* 2023 WL 8518003 (2nd Cir. 2023) (same).

Here, Plaintiff Susan Goldman ("Goldman"), a gun-owning resident of Highland Park, and Plaintiff National Association for Gun Rights ("NAGR"), a non-profit incorporated in Virginia with offices in Virginia, Colorado, and South Carolina, challenge the constitutionality of provisions contained in the City's 2013 amended Code which ban assault weapons and related accessories. Collectively, Goldman and NAGR ask the Court to: (1) declare declaratory judgment pursuant to 28 U.S.C § 2201 that the challenged provisions, identified below, are facially unconstitutional; and (2) enter preliminary and injunctive relief enjoining Highland Park and its officers from enforcing the Code, as well as damages and other remedies available under U.S.C §§ 1983 and 1988.

In response, Defendant Highland Park moved to dismiss NAGR from the suit for lack of standing under FRCP 12(b)(1) and moved to deny Goldman's requests for preliminary relief. The Court first considers the merits of Goldman's preliminary injunction, which, as explained below, the Court denies. The Court then turns to NAGR's standing and dismisses NAGR from further proceedings.

## II. Preliminary Injunction

### A. Legal Standard

A preliminary injunction is an "extraordinary remedy." *Bevis,* 85 F.4th 1175, 1188 (citing *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008)). To obtain this "drastic" remedy, the plaintiff bears the burden of showing "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* (cleaned up). Plaintiffs can carry that burden only with a "clear

showing" on each of the four factors, including in constitutional cases. *Troogstad v. City of Chicago,* 576 F.Supp. 3d 578, 583 (N.D. Ill. 2021) (denying preliminary injunction motion involving Due Process challenge), *aff'd sub nom.*, *Lukaszczyk v. Cook Cnty.*, 47 F.4th 587 (7th Cir. 2022); *see also, e.g.*, *Braam v. Carr*, 37 F.4th 1269, 1272 (7th Cir. 2022) (same for Fourth Amendment challenge); *Cassell v. Snyders*, 990 F.3d 539, 544–50 (7th Cir. 2021) (same for First Amendment challenge).

Despite extensive briefing and attention brought to this case, which saw the submission of four amici, (see Dkt. Nos. 52, 59, 60, 62), *Bevis* makes the Court's analysis here simple and straightforward. Following *Bevis*'s command, the Court finds that Plaintiffs are unlikely to succeed on the merits.

## B. Analysis

"In a crisp, if not enigmatic, way, [the Second Amendment] says this: A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.'" *Bevis,* 85 F.4th at 1188; U.S. CONST. amend. II. This right, however, is not an absolute bar to government regulation. *District of Columbia v. Heller,* 554 U.S. 570, 595 (2008) ("Of course the right was not unlimited, just as the First Amendment's right of free speech . . .). Instead, the Second Amendment pertains to "weapons in common use for self-defense." *Bevis,* 85 F.4th at 1192. In other words, it applies to "*weapons that were not specifically designed for military use and were not employed in a military capacity.*" *Id*. at 1193 (emphasis in original). Bearable

arms, then, "extends only to weapons in common use for a lawful purpose. That lawful purpose . . . is at its core the right to individual self-defense." *Id*.

When reviewing government regulation, the Court must first decide whether the Second Amendment's plain text covers an individual's conduct. *Id*. (citing *Breun,* 591 U.S. at 24). It is the plaintiffs' burden to demonstrate "that the weapons addressed in pertinent legislation are Arms that ordinary people would keep at home for self-defense purposes," as opposed to exclusive or predominate military use. *Id*. at 1194. If the weapons are indeed ordinarily kept for self-defense, then "the Constitution presumptively protects that conduct." *Id*. The analysis then moves to the second step, which requires a demonstration that the regulation is consistent with the Nation's historical tradition of firearm regulation. *Id*. While the Seventh Circuit has not affirmatively placed the burden of the second step on to the government, it did so in *Bevis*. *Id*. at 1198 ("We will assume (without deciding the question) that this is a step two inquiry, where the state bears the burden of proof.") Again, following the Seventh Circuit's command, this Court will place the burden of this step on the government. In any event, Plaintiffs' pursuit of an injunction must be denied.

### 1. *Protected Arms*

Plaintiffs take issue with Chapter 136 of Highland Park's City Code (the "Code"), particularly §§ 136.001 and 136.005, which amended the City's Code to prohibit the manufacture, sale, and possession of assault weapons and large-capacity magazines within City limits. 136.001 of the Code defines "assault weapon," which includes semi-automatic rifles, pistols, and shotguns with certain features, such as semi-automatic rifles with the ability to accept a large-capacity magazine and at least one of the following: (1)

a pistol grip without a shoulder stock; (2) a protruding grip for the non-trigger hand; (3) a folding, telescoping, or thumbhole stock; (4) a barrel shroud; or (5) a muzzle brake or compensator. "Large capacity magazines" are defined as ammunition-feeding devices that can accept more than 10 rounds of ammunition. *Id*. The Code also lists specific models of firearms it covers, including, for example, the AR-15, AK-47, Bushmaster XM15, MAC-10 and MAC-11 pistols, and Streetsweeper shotgun. *Id*.

Plaintiffs here do not make much of their burden. Their core argument is that the banned weapons, including the magazines, are in common use which, they erroneously claim "is the end of the [Court's] analysis." (Pl. Susan Goldman for Preliminary Inj. at 9; Dkt. No. 7). They otherwise attempt to distinguish AR-15s and other covered weapons from "machine guns" (*e.g.,* an M16), which are not protected by the Second Amendment, pointing to the fact that machine guns are fully automatic, whereas the covered assault weapons are semiautomatic. *Bevis,* 85 F.4th. at 1190 (citing *Heller,* 554 U.S. at 624-25) ("*Heller* deemed a ban on private possession of machine guns to be obviously valid."). *Bevis* forecloses this argument. In its two-to-one decision rejecting identical arguments furthered in dissent, the Seventh Circuit explained that the "only meaningful distinction" between the two is that "the AR-15 has only semiautomatic capability (unless the user takes advantage of some simple modifications that essentially make it fully automatic), while the M16 operates both ways."  Hence:

> Coming directly to the question whether the weapons and feeding devices covered by the challenged legislation enjoy Second Amendment protection, at the first step of the Bruen analysis, we conclude that the answer is no. We come to this conclusion because these assault weapons and high-capacity magazines are much more like machineguns and military-

grade weaponry than they are like the many different types of firearms that are used for individual self-defense (or so the legislature was entitled to conclude). Indeed, the AR-15 is almost the same gun as the M16 machinegun.

*Id*. at 1195.

Highland Park's Code directly mirrors the regulations considered in *Bevis,* which also banned pistol grips, detachable stocks, thumbholes, or other items that enhances the concealability of the weapon, as well as semiautomatic rifles with a fixed magazine capacity of greater than 10 rounds. *Compare Bevis,* 85 F.4th at 1183 *with* Highland Park City Code §§ 136.001 and 136.005. There is nothing that distinguishes Highland Park's assault weapon ban, and Plaintiffs have offered no reasons to otherwise distinguish AR-15s from military-grade weapons already outside the scope of Second Amendment protection. Plus, as Plaintiffs' now-moot motion to reassign noted, the Code at issue here was "modeled after the Cook County ordinance" that *Bevis* already considered. (Memo. In Supp. of Mot. for Rule 40.4 Reassignment at 6; Dkt. No. 79). Hence, Plaintiffs have failed to show that they are likely to succeed on the merits of their Complaints because the Seventh Circuit has already considered and rejected in full identical regulations defended by identical arguments. While there is the possibility that AR-15 *as sold* is an Arm, neither the parties nor the evidence before us addresses these points. *See Bevis,* 85 F.4th at 1196.

### 2. Historical Tradition

While our analysis for the preliminary injunction need not continue, *Bevis* also makes quick work of Plaintiffs' argument that *Bruen* "established that there is no tradition

of banning commonly possessed arms, such as the assault weapons and large-capacity magazines banned by Highland Park's Code." (Pl. Susan Goldman for Preliminary Inj. at 27.) Again, they claim that the fact that assault weapons are common (a proposition the Court does not weigh in on) is dispositive. However, this second step is not solely based on numbers. *Bevis,* 85 F.4th at 1198-99 ("For the reasons set forth in more detail in *Friedman,* we decline to base our assessment of the constitutionality of these laws on numbers alone.") Rather, "the relevant question is what are the modern analogues to the weapons people used for individual self-defense in 1791, and perhaps as late as 1868." *Id*. at 1199.

To justify its Code, Highland Park identifies an array of analogues from the relevant historical period. This includes 18th-century laws which banned: (1) the carrying of blunt weapons, like clubs, which were frequently used in fights; (2) firearms that could fire automatically, or "trap guns"; (3) an early 19th-century ban on Bowie knives, which represented a "technological advance" over prior guns; as well as (4) late 19th century weapons, including multi-shot weapons that were banned in several states. (Def.'s Rep. in Opp'n at 36-37 (Ex. 6) Roth Decl.; (Ex. 8) Spitzer Decl.).

This 18th- and 19th-century history Highland Park relies on here is precisely the history relied on by the *Bevis* court when it held that the *Bevis* plaintiffs were unlikely to succeed on this step, too. *Bevis,* 85 F.4th at 1201 ("[W]e think that the legislatures involved here did stay within those [traditional] boundaries"). That history included the same Bowie knife regulations, restrictions on clubs, as well as modern machine gun bans, which collectively illustrated that "there is a long tradition, unchanged from the time when

the Second Amendment was added to the Constitution, supporting a distinction between weapons and accessories designed for military or law-enforcement use, and weapons designed for personal use." *Id*. at 1202. Regulations that ban assault weapons, as here, are merely a continuation of a long-established history.

As above, Plaintiffs are not likely to succeed on this step either, as the Seventh Circuit has already considered identical statutes justified by the same history in *Bevis*. And as with *Bevis,* there is "no need to decide whether an alleged Second Amendment violation gives rise to a presumption of irreparable harm, and if so, whether any such presumption is rebuttable or ironclad." *Id*. at 1202-03. The Court denies Plaintiffs' request for relief and now turns to NAGR's standing.

### III. STANDING

#### A. Legal Standard

It is not disputed that NAGR lacks standing to sue in its own right, but organizations like NAGR may still have associational standing to sue on behalf of their members. *White v. Illinois State Police,* 15 F.4th 801 (7th Cir. 2021) (citing *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of City of Milwaukee,* 708 F.3d 921, 926 (7th Cir. 2013)). To establish associational standing, NAGR must demonstrate that: (1) at least one of its members possesses standing to sue; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted, nor the relief requested, requires the participation of individual members. *Prairie Rivers Network v. Dynegy Midwest Generation, LLC,* 2 F.4th 1002, 1008 (7th Cir. 2021). ("Without at least one individual member who can sue in their own right, PRN cannot sue on their behalf.");

*Teamsters Loc. Union No. 705 v. Burlington N. Santa Fe, LLC,* 741 F.3d 819 (7th Cir. 2014) (local union suing on behalf of union members). When defendants raise a facial challenge to standing, as here, courts take the allegations in the complaint as true and assess whether they plausibly show plaintiff has standing. *Prairie Rivers Network,* 2 F.4th at 1008.

### B. Analysis

With much opposition from Highland Park, NAGR moved to amend its Complaint, wherein they tack on additional issues and defendants and "amend the standing allegations to address issues raised by the City in its motion to dismiss." (Pls.' Mot. to Amend at 2; Dkt. No. 42). NAGR subsequently withdrew its amendment, so the Court will focus on Plaintiffs' Complaint as originally filed. (Pls.' Unopposed Withdrawal of Mot. to Amend; Dkt. No. 95). In that Complaint, NAGR claimed that it "has members who reside" in Highland Park and "represents the interest of those who are affected by the City's prohibition of commonly used firearms." (Compl. at 1; Dkt. No. 1). NAGR otherwise fails to provide identifying features of these members: not their names or ages, there are no submitted declarations from members (anonymized in some way or not) or third parties affirming interactions with members that reside in Highland Park, or any other identifying features of these members. Not even co-plaintiff Susan Goldman is a member of NAGR. Instead, NAGR only refers to its Highland Park-based membership as a collective.

Associational standing "requires more specificity." *Prairie Rivers Network,* 2 F.4th at 1005. For instance, the *Prairie Rivers* organization Prairie Rivers Network ("PRN") lacked associational standing because the plaintiff spoke "of its members only as a

collective, claiming that [defendant's] alleged discharges have harmed, and will continue to harm, '[t]he individuals' use and enjoyment of" the city in which they resided. *Id*. at 1006. As with NAGR, PRN did not otherwise provide any identifying features of its members. In *White v. Illinois State Police,* despite claiming that 17,000 members and supporters resided in Illinois, the organization's complaint was also insufficiently specific because "it [did] not identify any members." 15 F.4th 801, 807 (7th Cir. 2021).

Relying on *Bowsher v. Synar,* NAGR erroneously claims that the Supreme Court has held that, in the context of multi-plaintiff constitutional challenges to legislative and regulatory actions, only one *plaintiff,* as opposed to *member,* is sufficient to confer standing. 478 U.S. 714 (1986). This is not correct. As the Seventh Circuit made clear in *Prairie Rivers,* "standing for at least one individual *member* remains an essential component of associational standing at each stage of litigation." *Prairie Rivers Network,* 2 F.4th at 1011 (emphasis added). This was precisely what made the *Bowser* organization's standing "clear," as "*members* of the Union, one of whom [was] an appellee," had standing. 478 U.S. at 721. (emphasis added).

Cases where courts have found associational standing only make it clearer that NAGR lacks standing here. In *Ezell v. City of Chicago,* the individual plaintiffs were also members of their co-plaintiff organizations. 651 F.3d 684 (7th Cir. 2011) (*see* Appellants' Brief Short App'x, 2010 WL 6636438, at *64). In *Teamsters Loc. Union No. 705 v. Burlington N. Santa Fe, LLC,* a local union had standing where it sued on behalf of its members. 741 F.3d 819 (7th Cir. 2014). In *Luce v. Kelly,* while no members were identified by name, the court concluded that the "organizations' identification of [four]

members, by age and county of residence, suffices at the pleadings stage to establish member standing." 2022 WL 204373, at *4 (N.D. Ill., Jan. 24, 2022). The *Luce* organization also submitted a declaration wherein its director claimed to have personal knowledge of members with standing. *Id.*, at *2. And finally, in *Marszalek v. Kelly,* the organization established associational standing where its lawyer attested in declarations to receiving "steady communications" from individuals, identified by their initials and details of their alleged injury, in addition to the lawyer's own personal knowledge of individual members. 2022 WL 225882, at *4 (E.D. Ill., Jan. 26, 2022). At every turn, associational standing has required at least one specific member to have been identified.

None of these identifying features are found here. Because NAGR merely refers to its members in the collective, *Prairie Rivers* controls. Thus, the Court grants Highland Park's Partial Motion to Dismiss NAGR for lack of standing.

## IV. **CONCLUSION**

For the reasons stated herein, this Court denies Plaintiffs' request for preliminary relief and (Dkt. No. 7) grants Defendant's 12(b)(6) Motion (Dkt. No. 26), dismissing NAGR for lack of standing. All other matters are mooted and dismissed accordingly (Dkt. Nos. 79, 92, 96).

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: 1/9/2024

- 11 -